The first case this morning is People v. Musgraves 514-0313. Counsel for the appellant may proceed. Please state your name for the record. May it please the Court, Counsel. My name is Elizabeth Brody and I represent Scotty Musgraves in this matter. Subject to the Court's questions, I intend to focus my remarks just on the first two issues raised in the brief. First, that the State failed to prove Mr. Musgraves guilty of aggravated domestic battery, where it showed insufficient evidence to prove great bodily harm. And second, that Mr. Musgraves did not receive a fair trial, where the jury was enflammed through the introduction of other crimes evidence, bad character evidence, an irrelevant and prejudicial mugshot, and insinuations that he suborned perjury. First, turning to the first issue. On January 19, 2014, Malia Collins went to the hospital with injuries that she told the nurse were caused by Scotty Musgraves. At trial, she changed her story and indicated that she fell. But this reasonable doubt argument is not addressing all of the issues in the State's case or Collins' credibility, but simply the issue of whether the State proved beyond a reasonable doubt that her injuries were consistent with great bodily harm. The evidence at trial showed that she had a one-inch cut to her palm, swelling and bruising to her forearm and upper arm, superficial abrasions to her leg, a small cut behind her ear, a finger abrasion. And taken together, these do not amount to great bodily harm. The word great means remarkable in magnitude, power, intensity, degree, or effectiveness. And it must be given that meaning in the statute. The best illustration of the injuries was photos submitted at trial, and those are attached to the opening brief for your review. As you'll see, the photos are shadowed. The pictures were taken only before the wounds were cleaned. There are no comparison photos. There's no indication of scale. And there's not a comparison photo between left and right arm. This leaves us without good evidence of the degree of swelling, what the depth of any of the lacerations to the palm was, and without proof that these were consistent with great bodily harm. Now, in this case, there were no fractures, no head injury, no damage to internal organs, no uncontrolled bleeding, no testimony about prolonged recovery or functional limitations. Simply put, the evidence was not sufficient to prove great bodily harm. Now, even if this court finds that the evidence was sufficient to be put to the jury, the issue is at least close. This is backed up by the fact that the jury requested a definition of great bodily harm during the deliberations, and also that the trial court compared the injuries in ruling on the motion for a new trial, That goes to your second issue, is that right? Yes. As far as you're arguing closely balanced for the prejudice angle on the non-objective two errors, the alleged errors. Yes, Your Honor. What about this Cisneros case? Would you address that and how that accounts for the appellant argument in that case? I'd like your thoughts. Certainly. Cisneros does depart from the general bullying in some First District cases. In an appellant. Right. Sorry. So, I think the underlying issue in Cisneros, though, what you have is not a reputation of the logic of the fire cases, but just the invocation of May. So the injuries in Cisneros were lacerations. But I don't think the courts that even invoke May would say that no laceration could ever be great bodily harm. Laceration means a cut, you know, a cut to the skin, typically by a sharp object. But in this case, wasn't there one that required several stitches?  There wasn't testimony that, there was just testimony by the nurse. There wasn't testimony by the medical professor who made that judgment to apply stitches. And I would say that four stitches alone where we don't have an indication that there was uncontrolled bleeding, no indication of functional limitations, no indication of the depth of the wound, that that alone isn't great bodily harm. Does it matter that there were several different body areas bruised, scraped, and cut? Certainly, a fact finder needs to look at the extent of the overall injuries. But in this case, the injuries taken together didn't appear to provide functional limitations. We do have bruising. We do have contusions in addition to the laceration. But even taken all together, we're not looking at something that is remarkable in magnitude. Yes, these were injuries, you know, but I, the, even the logic in Cisneros, where in that case you've got the court indicating that there was uncontrolled bleeding and extensive bleeding where the injuries bloodied a whole shirt. You have descriptions of the injuries that they were deep or long. All of the lacerations resulted in scarring that were viewed by the jury. So simply put, just because there are multiple injuries does not, does not raise this to the level of great bodily harm where each of the injuries, particularly the only two that are really, I would say, at issue, not described as superficial are the laceration of the palm and the swelling. And turning briefly to the second issue, again, we have repeated prejudicial evidence that was put before the jury that threatened to sway the balance on this close issue of great bodily harm. Collins told the jury that she'd only been with Mr. Musgraves for about a year since he was released from prison. His prior custody status or charges was not properly before the jury. In any other manner. She then indicated that she had raised their 12-year-old son alone and that he had been gone for the last 12, 13, 14 years. But that doesn't necessarily imply that he's been in prison for the last 12 or 13 years, does it? It doesn't provide a conclusion, but I do think it provides an inference. But either way, it's still a prejudicial fact about his character that underlines the standard of birth. But the way I read the briefs, and correct me if I'm wrong, that the statement was that he just got out of prison about a year ago, but that she raised the son by herself for the last 12, 13, 14 years. Right. And I think when those are occurring close together, those statements, the implication is he's been gone, possibly in prison, which is actually the case here. So taken together, those statements could lead to a conclusion that he had been gone in prison for a long period of time. But even if the court doesn't follow me there. But this statement about prison, that wasn't a question that was directly asked. Wasn't that unresponsive information that the witness provided? Correct. And as I asserted in the reply brief, I don't think that that's an irrelevant question, but I also don't think it cures the prejudice. We've got here a series of errors that worked together to create a picture of Mr. Musgraves as a bad guy, a former criminal who's deserving of punishment, even though the evidence is close on this issue. So that's the problem. That we learn he's been in prison maybe for a while, definitely hasn't been around for his son, in fact, has another child the same age from another woman. He was in a relationship at the same time. That the deputy investigating the case knew him on site, again, suggesting prior contact with law enforcement. Then we have a visual depiction of him as a criminal through the mug shot, which was otherwise irrelevant. And that, again, is attached to the brief for your review. And finally... I think the State's position on that was that there was some evidence of a fight and that the judge allowed it in for the purpose of showing no injury to the defendant. What's your response to that? Two responses. First, there was a testimony that there was mutual combat. The most we get of that is that she threw a stool at him. And that's her trial testimony, which the State, in general, disputes. But even if that's a fact, we say it's in consideration for the jury. She never says she made contact with him or that there was any sort of injury involved. But second, and more importantly, if you look at the mug shot, we've got a picture of him from the front and the side that is not even his full shoulders. So just the very top of his shoulders, his T-shirt, his V-neck. And there's a shadow across his face. So we have... It doesn't provide any evidence of any injury below the shoulders. And I would say it's... Another question about that picture. So I understand that the jury asked for that at the time it was sent back. Yes. But the detail about the mug shot was removed at the time it was sent back. Was that published to the jury at the time it was submitted? I don't believe... I guess I'm not... You'll have an opportunity to reply. Thank you. Counsel, please. Thank you. May it please the Court. Counsel, my name is Sharon Shanahan, and I represent the people of the state of Illinois. I will begin my argument today by a statement that I found a bit odd in my argument this morning in which counsel for the defendant says that she's not addressing Ms. Collins' credibility. And I don't see how you can possibly come to a conclusion in this case without addressing Ms. Collins' credibility. Because the statement Ms. Collins gave to the triage nurse, to the officer in the hospital, directly conflicted with her statement, her testimony at trial. I mean, at trial she says, no, the defendant didn't hit me. I fell down the steps. But at the hospital she gave a statement that said her boyfriend hit her, that he broke a chair over her. She said she had... Well, we know she had cuts. We know that she said that her boyfriend beat her. She said he choked her. Was there any markings of the choking? No, there weren't. But there was testimony that Ms. Collins is an African-American, and that's not an American. It's obviously in the pictures. There was testimony, and I don't remember whether it was from the police officer or the triage nurse, that these bruises can come later on, become visible later on. But I think the important thing here is this is an issue for the jury. This jury saw the pictures. They listened to the triage nurse testify. They listened to the police officer testify. They listened to Ms. Collins testify. They could get such a sense of credibility from these witnesses, or lack thereof, that we can't possibly find in a cold record. And it is for that reason that we give this deference to their findings. We have... The jury asked a question of the judge during the deliberation about the grape-bottling arm. Yes. And can you provide some context for that? Well, very little. Certainly, they did ask for it. It is my recollection that it was not defined. But they returned to their deliberations and found grape-bottling arm. And I think when you take... You touched on something earlier in questioning counsel for the defendant. Was there a concussion or a broken leg or something like that? No. But when you take the cut on her hand that did take stitches, the fact that she said her pain was 8 out of 10 the fact that she did miss work. Now, we don't know how long, but she did miss work. She did say that after a couple of days the pain subsided. Her next statement was like something about keeping your leg elevated. There was... When the officer went to the home, he finds a broken stool. He finds shelves and storage bins knocked over. He finds blood on a sheet. Was any picture of that stool or any physical evidence admitted? There's a picture of the room and I believe the stool's in it. That's my recollection. And that will be in the evidence? Pardon me? That will be in the evidence? Correct. So, what we have here is a very... I repeat, this is why we hand these things to a jury and say you are the fact finders. You are the ones that decide credibility. You are the ones that can decide whether Ms. Collins was telling the truth when she was in the hospital. You are the ones that can decide whether a laceration to the palm, bruising and swelling of the left arm, bruising of the upper arm, abrasions, lacerations on the left leg, a cut on her finger, a cut behind her ear, the cut on the palm required stitches. The triage nurse was so concerned about the swelling of her arm that she thought it might be broken. Ms. Collins is crying. She's tearful. As I said, she rates her pain 8 out of 10. And as I noted in our brief and counsel for the defendant concedes in the reply brief, this can all be considered substantively even though she changed her testimony at trial. She said that she missed work before her injury. She said her doctor gave... No, I take back that she said. Evidence indicates that she missed work because of her injuries and that her doctor gave her pain medication and that she says she was in a lot of pain. That wasn't the testimony of Ms. Collins? That was some other evidence as to how much work she missed? That was her testimony. Okay. But not... it wasn't specific as far as how many days she missed but it is definitely in the record that she did miss work. She indicated that she took the stitches out herself. I don't see that that minimizes her injuries at all. That's just going against medical advice. If your doctor puts stitches in your hands and tells you to come back in so many days and we'll take them out and you decide to take them out early, that doesn't minimize your injury. That just means you did that. It seems apparently that she only missed maybe one or two days. A couple. My impression was a couple, yes. Because she said her pain subsided after what, one day? She said her pain subsided but as I said, she follows that almost immediately by saying she elevated her leg. It's not entirely clear in the record whether the pain subsided and went away, whether the pain subsided because she elevated her leg. But I don't know that whether she missed one day, two days, or a week of work. Well, it didn't sound like it. It wasn't a lot. No, it wasn't a lot. But I don't know that that's that critical in this determination of free bodily harm. And I think that the cases cited by the state show that injuries equivalent to this have consistently been upheld. What was the date on, how late after the occurrence did they take these pictures? Very shortly. Very shortly. I mean, very shortly after she got to the hospital. That's before the stitches, I think, isn't it? I believe so, yes. But I would like to briefly touch on the second issue. I just have to note that in the reply brief, counsel for the defendant admits that when taken individually, the errors were admittedly relatively minor and may not constitute reversal error. So the only way that you can take these alleged errors, even under defendant's theory of the case, and find reversible error, is if you find cumulative error. And I see no... I mean, this is a... This is plain error review. It's really easy to overlook that. The mug shot was objective to you. Yes, that one was. And so how was that relevant? Well, because she did say that she threw, in her revised testimony, she said she threw this chair at the defendant. And the defendant had said that there was no altercation at all. And it's interesting that the judge said, for what it's worth, obviously he didn't think it was worth much one way or another. It's a minor thing. I've got to point out this one thing. And I know I'm out of time. Counsel argues that another reason for error in this question is that it shows the defendant's tattoos. And the tattoos are evidence of criminal behavior. When I started at the appellate prosecutor's office nine years ago, eight years ago, there were nine attorneys in the office and eight of us had tattoos. So I quite follow this argument that because you have tattoos, that shows criminal behavior. So if there was an error there, it certainly was not planned. Thank you, counsel. Reply. Thank you. First, the argument is not that tattoos in and of themselves are evidence of criminal behavior. The argument is that the portrait of the defendant painted inappropriately by the state through the admission of these series of events paints a prejudicial picture for 12 jurors. I don't think it's a controversial statement to say that neck tattoos, as depicted here where you've got them coming in, you'll see in the photo, might lead jurors to conclude that this is not a guy who's got a steady job, whose neck tattoos impede his life. But that's really a minor issue here. You mentioned that the mugshot portion is cut off, but again, we've got a front picture and a side picture. It's pretty clear this is a mugshot. And turning to the more important point that I would like to reiterate, yes, the jury listened to all the evidence here, but they asked for help in defining great bodily harm. They too had confusion about whether this was sufficient. And while deference is owed to the fact finder, this court is not bound by it. And where the evidence just doesn't rise to the level of great bodily harm here, this court is not required to follow the jury. And just a brief point, while an x-ray was taken, the nurse indicated that in her examination she found no deformity and defined that in cross-examination as not suspecting a fracture. So there was no fracture, and while they took the precaution of taking the x-ray, there was not true suspicion of a likely fracture here. So based on the issues as presented, we would ask that this court reduce Mr. Musgrave's conviction to domestic battery or alternatively remand for a new trial. Thank you. Thank you, counsel. This matter will be taken under advisement of the court.